# IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE                                            : CHAPTER 13
                                                 :
EVETTE RUIZ                                      :
              DEBTOR(S)            : BANKRUPTCY NO. 13-11838 SR

# OPINION

BY: STEPHEN RASLAVICH, UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

    Before the Court is the Debtor's Objection to the Proof of Claim of RBS Citizens, N.A. RBS opposes the Objection. A hearing on the matter was held on October 16, 2013. The parties submitted briefs and the Court took the matter under advisement. For the reasons which follow, the Objection will be sustained in part and denied in part.[1]

*Claim*

    RBS's claim arises out of an FHA-insured loan. The loan is secured by a mortgage on the Debtor's principal residence. The loan is in default and RBS filed a secured Proof of Claim which consists, in part, of an arrearages component. *See* Proof of Claim No. 5. The total amount of the claim is $52,818.96. Of that total amount, $13,176.26 is comprised of arrearages.

*Proposed Treatment*

    Because the claim is secured by the Debtor's principal residence, it may not be modified. *See* 11 U.S.C. § 1322(b)(2). Accordingly, the Debtor's plan proposes to

---

[1] Because this matter involves an objection to allowance of a claim, it is within this Court's core jurisdiction. *See* 11 U.S.C. § 157(b)(2)(B).

reinstate the loans by curing defaults and paying currently on an ongoing basis. *See* Plan, ¶2B; *see also* 11 U.S.C. § 1322(b)(5) (permitting the cure of a default under a loan secured by a mortgage on the debtor's principal residence)

*Objection*

The Debtor objects to certain components of the arrearages claim. Specifically, the Debtor objects to three charges: (1) foreclosure fees and costs; (2) late charges; and (3) property inspection fees.[2] *See generally* Objection.

*Burden of Proof*

The burden of proof shifts throughout the course of a claims objection. Initially, the claimant must allege sufficient facts to support its claim and once done, the claim becomes prima facie valid. *See* 11 U.S.C. § 502(a); B.R. 3001(f). Thereafter, the burden of going forward shifts to the party objecting to the claim—here, the Debtor— to produce evidence to negate the prima facie validity of the claim. If the Debtor produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to RBS to prove validity of the claim by a preponderance of the evidence. *In re Allegheny Intern., Inc.*, 954 F.2d 167, 173 (3d Cir.1992). The Debtor does not dispute that the claim has facial validity; what is disputed is certain charges included therein.

*FHA Mortgage Loans
and Assessable Charges*

Because the claim involves an FHA-insured mortgage,[3] the question of what fees and costs may be charged is not limited to the parties' agreement or otherwise applicable state law. The Secretary (of HUD) is authorized and directed to make rules

---

[2] The objection challenged a fourth fee (escrow advances) but the parties apparently have reached an accord with regard to that charge and so it will not be discussed herein.

[3] See 12 U.S.C. § 1709(a) (providing that the Department of Housing and Urban Development (HUD) is authorized to insure certain mortgages).

2

and regulations dealing with federally-insured mortgages. *See* 12 U.S.C. § 1715b. Where HUD rules or regulations are incorporated into an insured mortgage, they are binding upon both the mortgagor and mortgagee. *Application of Fleetwood Acres, Inc.*, 186 Misc. 299, 303, 62 N.Y.S.2d 669, 673 (1945). Among the regulations are provisions regarding the assessment of fees and charges:

> (a) The mortgagee may collect reasonable and customary fees and charges from the mortgagor after insurance endorsement only as provided below. The mortgagee may collect these fees or charges from the mortgagor only to the extent that the mortgagee is not reimbursed for such fees by HUD.
>
> (1) *Late charges* as set forth in § 203.25;
> ...
> (9) Attorney's and trustee's fees and expenses actually incurred (including the cost of appraisals pursuant to § 203.368(e) and cost of advertising pursuant to § 203.368(h)) when a case has been referred for *foreclosure* in accordance with the provisions of this part after a firm decision to foreclose if foreclosure is not completed because of a reinstatement of the account. (No attorney's fee may be charged for the services of the mortgagee's or servicer's staff attorney or for the services of a collection attorney other than the attorney handling the foreclosure.)
> ...
> (14) *Property preservation expenses* incurred pursuant to § 203.377.

24 C.F.R. § 203.552(a) (emphasis added).

*Foreclosure Costs and Fees*

The Debtor's first objection is to the lenders' foreclosure costs and fees. Those fees total $2,282.48 and consist of attorney's fees, title search fees, filing, service and sale costs. The Debtor's basis for challenging those fees is that the lender accrued them prematurely. Under applicable state law, she argues, a mortgage lender may not start foreclosure proceedings before the lender gives the borrower notice that it intends

3

to foreclose. In this case, says the Debtor, RBS never gave that notice. Debtor agrees that RBS attempted to give that notice but argues that the notice that it did give failed to include certain required information. Specifically, the notice it gave stated an incorrect amount that Debtor should pay if it intended to cure and reinstate the loan. The effect of that omission, says Debtor, divest the state court of subject matter jurisdiction over the foreclosure action. In support of her position, Debtor relies principally on *Main Line Federal Sav. & Loan Assoc. v. Joyce*, 632 F.Supp. 9 (E.D.Pa.1986). That case held that proper notice of foreclosure is a jurisdictional prerequisite. *Id.* Failure to provide a debtor with precisely how the total amount required to cure the default is calculated warrants dismissal. *Id.*

In response, RBS challenges the conclusion that a defective notice divests the court of subject matter jurisdiction. It relies on a recent case from the Pennsylvania Supreme Court which declined to extend the holding in *Joyce, supra. See Beneficial Consumer Discount Co. v. Vukman*, 2013 WL 5354330, at *5 (Pa. Sept. 25, 2013) (stating that the test for whether a court has subject matter jurisdiction is the competency of the court to determine controversies of the general class to which the case presented for consideration belongs). The Supreme Court in *Vukman* found that a defective notice of intent to foreclose constituted a defect in procedure and that it did not implicate jurisdiction.

This Court agrees with the holding that a defective notice does not divest jurisdiction; however, other grounds exist to disallow the foreclosure fees and costs. Pennsylvania law provides, in pertinent part:

> (a) *Before any residential mortgage lender may ... commence any legal action including mortgage foreclosure*

4

> ... such person shall give the residential mortgage debtor notice of such intention at least thirty days in advance as provided in this section.
> ...
> (c) The written *notice shall clearly and conspicuously state:*
>
> (1) The particular obligation or real estate security interest;
>
> (2) The nature of the default claimed;
>
> (3) The *right of the debtor to cure* the default as provided in section 404 of this act and *exactly what performance including what sum of money*, if any, must be tendered to cure the default;

41 P.S. § 403(a), (c) (emphasis added).

It cannot be disputed that the notice which RBS gave the Debtor failed to state the correct "cure" amount. That is demonstrated on the face of the notice. As the "cure" amount, it demands payment $5,505.93. Elsewhere in the notice that figure is contradicted. If one takes the number of missed payments stated (11) and multiplies that by the monthly payment amount ($465.33) and then adds to that subtotal the late charges ($275.66), then the grand total is $5394.28. This is a discrepancy of more than $100. Most importantly, it makes the notice ambiguous: it does not "clearly and conspicuously" state the sum of money need to cure the default. Having failed to provide that required information, RBS had no right to commence foreclosure and accrue related charges. For that reason, none of the costs or fees related to foreclosure was warranted and, therefore, all will be disallowed.

*Late Charges*

Debtor next objects to the late charges of $372.67. While both the terms of the mortgage and the applicable HUD regulations allow for the assessment of late charges, the Debtor disputes RBS's right to claim late charges in this instance. She argues that

because RBS accelerated the loan balance, late charges are precluded. See Objection ¶¶ 31-32; Debtor's Brief 10-12. In response, RBS points out that the Debtor proposes to cure the delinquent amounts under her plan. RBS's Brief 4. That, by definition, entails reinstatement of the loan. If the Debtor is reinstating the loan, then there is no acceleration which would preclude late charges. Id.

The Court is in agreement with RBS on this issue. Both the Bankruptcy Code and the HUD regulation provide that if the defaulting borrower wishes to reinstate the loan, then all amounts past due must be paid. See 11 U.S.C. § 1322(b)(5) (providing for the "curing of any default" on a home mortgage); and see 24 C.F.R. § 203.608 (requiring the mortgagee to "permit reinstatement of a mortgage, even after the institution of foreclosure proceedings, if the mortgagor tenders in a lump sum all amounts required to bring the account current"). This entails recovery of late charges where such charges are provided for in the parties' agreements:

> If the debtor proposes to cure the mortgage arrearage, she has decided to deaccelerate the mortgage default. See Matter of Roach, 824 F.2d 1370 (3d Cir.1987). Upon the successful completion of her plan, her mortgage is reinstated as if there had been no prior default and the effect of the prepetition judgment is extinguished. See In re Smith, 92 B.R. 127, 130 (Bankr.E.D.Pa.1988); In re Bertsch, 17 B.R. 284 (Bankr.N.D.Ohio 1982). Any attempt to cure the prepetition mortgage arrearage requires that all missed prepetition payments be made *along with late charges* and other costs permitted to be assessed by the mortgage agreement; in essence, the debtor is choosing to repay the loan under the terms of the mortgage contract, including its interest rate. Id.

In re Galloway, 220 B.R. 236, 242 (Bkrtcy.E.D.Pa.1998) (emphasis added) quoting In re Rorie, 98 B.R. 215, 218-219 (Bkrtcy E.D.Pa. 1989). Both the mortgage and the note in

this case provide for late charges. *See* Note, ¶6A; Mortgage, ¶1. Accordingly, the late charges will be allowed in full.

*Property Inspections*

The final objection is to the fees of $203.50 for 19 property inspections. Debtor maintains that RBS has not demonstrated the required grounds for a property inspection. According to the Debtor, the applicable HUD regulation prescribes a condition precedent to inspection: either that the property is vacant or that the lender attempt to confirm occupancy:

> The mortgagee, upon learning that a property subject to a mortgage insured under this part is vacant or abandoned, shall be responsible for the inspection of such property at least monthly, if the loan thereon is in default. When a mortgage is in default and a payment thereon is not received within 45 days of the due date, and efforts to reach the mortgagor by telephone within that period have been unsuccessful, the mortgagee shall be responsible for a visual inspection of the security property to determine whether the property is vacant. The mortgagee shall take reasonable action to protect and preserve such security property when it is determined or should have been determined to be vacant or abandoned until its conveyance to the Secretary, if such action does not constitute an illegal trespass. "Reasonable action" includes the commencement of foreclosure within the time required by § 203.355(b) of this part.

24 C.F.R. § 203.377. Debtor alleges that she has always occupied the property. Objection ¶ 40. She further alleges being present during some of the inspections. *Id.* ¶ 41.

In response, RBS does not state whether the property was vacant or if it attempted to confirm occupancy. Instead, RBS relies on a provision in the mortgage which allows inspection *solely on the basis of default.* The mortgage provides that the

7

"lender may inspect the Property if the Property is vacant or abandoned *or the loan is in default.*" See Objection, Ex. B, Foreclosure Complaint with Mortgage attached as Ex. A., ¶ 5 (Occupancy). The parties thus disagree over what is the controlling authority on this point: the HUD regulations or the terms of the mortgage.

As stated, supra, "[w]here HUD rules or regulations are incorporated into an insured mortgage, they are binding upon both the mortgagor and mortgagee." *Application of Fleetwood Acres, Inc.,* 186 Misc. 299, 303, 62 N.Y.S.2d 669, 673 (1945). The mortgage provides that the "lender may collect fees and charges authorized by the Secretary [of HUD]." See Objection, *supra*, Mortgage ¶ 8. The Court finds the HUD regulation regarding property inspections to be controlling here. That requires proof of vacancy or at least an attempt to ascertain that fact. RBS offered no evidence on that point. Accordingly, the claim for property inspection fees will be disallowed.

*Summary*

From the arrearages portion of the RBS claim, the Court will disallow the foreclosure fees and costs ($2,282.48) and the property inspection fees ($203.50). The late charges ($372.67) will be allowed in full. The claim will be adjusted accordingly.

By the Court:

*Stephen Raslavich* (signature)

_____
Stephen Raslavich
U.S. Bankruptcy Judge

Dated:  November 13, 2013

8